and I guess we'll hear first from Mr. Banya. Correct, yes. David Banya here, representing Charise Parker. Good morning, Your Honors, and may it please the Court. Can you speak up a little bit? Sure. Good morning, Your Honors, and may it please the Court. Ms. Parker's appeal addresses several factors with respect to the District Court's opinion, so the best place to start is always at the beginning with Count 1. Ms. Parker pled a discrimination in violation of Title VII based on her status as a pregnant woman, and with respect to the prima facie case, the Court concluded that Ms. Parker couldn't make her prima facie case. However, the issues that weren't in dispute were Ms. Parker's membership in a protected class. She was a pregnant woman at the time of her discharge. She suffered an adverse employment action, termination. The Court did conclude that she proffered enough evidence to show satisfactory job performance at the time of her discharge, but the Court ultimately dismissed her claim based on her failure to meet the fourth prong, which we have asserted that the adverse action occurred under circumstances that give rise to an inference of unlawful discrimination. It appears that the Court in its decision went back and forth as to whether or not comparative evidence was required in order to meet that prong. Obviously, we asserted that it wasn't, and we proffered a lot of evidence that would allow a jury to conclude that her discharge was done under circumstances that would give rise to an inference of discrimination. For example, we proffered evidence of good performance and regular praise for her work performance by her supervisor. We proffered evidence that her supervisor recommended her to be a mentor to another employee seeking to enter into the specific field that Ms. Parker was in. We proffered evidence that she was never formally disciplined. She was never written up. She was never suspended nor presented with any sort of corrective action form as required. Part of your argument was that on the pregnancy discrimination on this last prong of a prima facie case, that the Court categorically excluded her, the plaintiff's testimony, and that it should have considered that as part of the totality of the circumstances. Am I making that up? No, no, no, you're absolutely right. Yes, you do recall that correctly. Yeah, the Court said that some language along the lines that other than her own testimony, she doesn't support the fourth prong. So is your argument that that's the error? Well, the error is ultimately the conclusion that she didn't proffer enough evidence to meet that fourth prong, and the Court's opinion sort of goes back and forth with respect to whether or not comparator evidence is required to meet that fourth prong, ultimately concludes that it isn't, but then faults us for not providing comparator evidence by stating something along the lines that Ms. Parker's case doesn't fall into an exception that wouldn't require comparator evidence. Again, our argument is the totality of the circumstances surrounding her termination would allow a jury to conclude and make a reasonable conclusion that unlawful discrimination was the true motivation for her discharge and not her performance issue, her alleged performance issues. Does that go to the prima facie case or does that go to a later finding regarding pretext? Or does it go to both? It goes to both, and that's another thing that I believe the District Court sort of did is segment evidence that their pretext analysis is very light and asserted that we didn't meet that, but the evidence is evidence, and evidence can be used to satisfy multiple elements of a prima facie case or in a burden-shifting scheme to satisfy the second burden, and it's particularly odd that the Court would reach that conclusion specifically when the Court did conclude that she proffered enough evidence to allow a jury to conclude that her performance was satisfactory, and yet the defendant, their stated reason for her discharge was performance reasons. And so right out of the gate, the Court concludes that a jury could call that into question, but then ultimately states that we failed to meet that burden. And so that's with respect to her count one. Like I said, there are a plethora of issues, but I'm happy to answer any questions relating to that. Well, my question isn't as focused. This case involves, I just don't see where the employer is shown to have acted in any respect negative to Parker's pregnancy. The first time there was any issue about it is when she started to bleed, and she took three days off, and her supervisor told her that's fine, and she started to do a couple of hours of work during those three days, and the supervisor says, no, take rest, and after three days she came back. That whole incident to me is totally neutral. There's no discriminatory intent or disappointment. It's just the opposite. It seems to me the employer suggested take the rest that's recommended, three days rest the doctor recommended. The second time came up in the spring when she said she was told to only work eight hours a day, and under the schedule she had, she only worked eight hours a day. She worked 8 to 5.30 or whatever the hours were, and so that was non-consequential. Nothing other in the record reflects any response or discussion or notice or concern or praise about her pregnancy, and this case doesn't seem to be about pregnancy. I don't know what it's fully about. They did find her work unsatisfactory. They started the process way before that second incident and laying the foundation because they had to get approval and explain why they weren't going to hire her. She was on a probationary period. But the evidence of discrimination with respect to pregnancy, where is it? So you really can't divorce the evidence of animus toward pregnancy versus the evidence of animus toward her? Well, I'm asking you for animus. Animus usually reflected in side comments or an e-mail here or there or a quip. We have none of that here. Well, we do have when Ms. Parker did approach her supervisor and informed her that her doctor limited her work hours to eight hours per day, her supervisor said pregnancy is no excuse. You're a salaried employee. You're expected to work more. And we would also push back that there is a mountain of evidence that Ms. Parker did, in fact, work more than eight hours a day. The set schedule, that's something in dispute and that's certainly something for a jury to decide because that's based on the supervisor's testimony. Except they explained that her hours were . . . She was a salaried employee who had hours from eight hours with a half hour off in the middle of the day, eight and a half hours with a half hour in the middle of the day. And those were her hours and those were the hours she was working. She asked one time to go home early, an hour early, so it was recognized that she was in this hourly context expected to be there eight hours a day. And her explanation was never rejected. Her explanation was basically said, well, that's your schedule. The doctor didn't countermand anything that she was already doing. Well, that's just simply a fact in dispute and it's right for a jury to decide. Well, I'm looking for the evidence and we both have read that same part of the record.  And the only other part that I know of that dealt with the pregnancy, well, there was a notification of pregnancy in November around Thanksgiving. There's nothing in the record about any reaction to that. So the first reaction was in December when she had that incident. And I thought the employer acted fairly positively toward her situation at that point. But discrimination requires showing that they made a decision. I mean, we have all the mechanisms of how to prove it and presume it and shifting burdens. But the bottom line is, was she discriminated against because she was pregnant or was there some other reason? And the district court concluded basically there just wasn't enough here, I think. Well, we would obviously dispute and I think the evidence shows that. I mean, we can't weigh evidence at this stage or even at the summary judgment stage. There are numerous emails, plethora of emails, showing Ms. Parker turning in work product after this quote-unquote set schedule. And so there's also testimony from the corporate designee saying that she was expected to work more than 40 hours a week. There's a business record from the Hartford, the third-party administrator, where Cherise Parker tells them she was working 10 to 12 hours a day, three to four days a week up through February. So there is evidence that she worked more than 40 hours. She asked for an accommodation based on her pregnancy, and she was told her pregnancy was no excuse. So I don't know what . . . I'm not sure what the court is finding is perfectly acceptable, but I would say that the ADA and Title VII say that . . . Well, I thought you were talking about discrimination. I mean, the ADA, I guess the question is you're looking for an accommodation there. And the only two accommodations that I saw on the record was, one, to get off for three days because of her condition, and that was granted. And not only granted, but enforced so that she would have rest. And the second was that she only worked eight hours a day, and that was her specified hours. So those were the two times an accommodation was requested. I'm not sure what she wanted. Did she say that she wanted something more than that at any point? No. She said she wanted to work only eight hours a day, and that was the order from her doctor. And so that was not granted to her. And this idea that there's a set schedule, and the only evidence of that is the supervisor's testimony. Meanwhile, there's countervailing evidence of her turning in work product well after this quote-unquote set schedule, as well as testimony from her saying that she worked more. There's a contemporaneous business record saying that she worked 10 to 12 hours a day, three to four days a week. And there's also testimony from the corporate designee stating that she was expected to work more than 40 hours a week. So that was an absolute denial of a request for an accommodation. And like I said, with respect to pregnancy . . . One was that the plaintiff failed to show she could perform the essential functions of the job if given a reasonable accommodation. And second, that the defendant said that it had done all it's legally obligated to do for the plaintiff, and that those simply weren't raised, and therefore they're waived. Well, I just . . . Because she didn't address these alternative findings of the district court as to that claim. So as to those claims, we didn't move for summary judgment. So we're not required to prove our case. We're only required to respond to their motion. They didn't attack those elements. They strictly attacked the element that she's not a person with a disability under the ADA. So we addressed that, that this idea that we have a burden beyond addressing what the person, the moving party on summary judgment, just finds no support in the law. They're the ones with the burden to show dispositive. It's a dispositive motion. Put dispositive evidence on the record that basically states that Ms. Parker could never, ever, in a million years, get a jury verdict. The point here is that these, on that particular issue, these are alternative findings by the district court that you did not contest. They were never raised. So the court brought it up and said . . . I would argue that they waived those elements.  Where do you address them here? I'm sorry? They're in the court's order, so where do you address them here? Well, I believe we addressed those in the opening brief, and I believe it is thoroughly addressed right at the beginning of our analysis on the court's holding on count two. And I believe it may be a footnote on . . . Well, you can tell us that when you come back. I was going to say, you're over your time now, but you have rebuttal, so you can address that if you wish at that point. All right. Thank you, Your Honor. We'll hear now from Mr. Tucker. Good morning, Your Honors. Jim Tucker for the Equal Employment Opportunity Commission. The commission is participating here mainly to address the district court's analyses as to the questions of substantial limitation and the request for reasonable accommodation. But if I could, before reaching those issues, just note, following up on your question, Judge Niemeyer, regarding the evidence in the record regarding a request for an accommodation beyond what should have been provided, at JA 126 and 500 through 501, there is evidence discussing how it was that Ms. Parker testified that she worked an 830-to-5 shift five days a week, but that she was also frequently required to work 10 to 12 hours a day. So it was beyond that shift. She did present evidence that she worked beyond more than a 40-hour week. And just to note that the event that gave rise to the argument about whether or not she was accommodated, that the week after her doctor provided her the limitation of no more than eight hours of work, she had already worked a full eight-hour day. And at that point, when her supervisor contacted her and asked her to perform more duties, she noted that she had been limited. And she provided that doctor's note and explained that due to her pregnancy, she was limited to working no more than eight hours a day. So there is evidence in the record addressing that point. But to come back again to the question of substantial limitation, and let's start with that. Regarding the district court's analysis, our concern was just, again, primarily to identify that it appears that the district court, in this case, relied on standards that had been preempted and pushed out by the ADA Amendments Act of 2008. The court relied on and identified as guidance in addressing whether or not Ms. Parker was substantially limited to district court decision, the Juan Asu decision, which itself references this court's 2002 decision in Pollard, and identifies the elements that, at that time, controlled the question of whether or not an individual was substantially limited in a major life activity. And that is no longer good law. It wasn't good law at the time of this district court decision. It's not now. Did the district court address the current law at all? You know, she mentioned that, and she identified that it is still a requirement under the newly amended statute that the individual must show a substantial limitation. And no one quibbles with that. That part of the statute wasn't changed. What was changed was the standard underneath that that is required to show and meet that limitation. So the district court acknowledged the substantial limitation but applied the wrong standard to analyze it based on old law.  That's our position, Your Honor. Again, this court in Summers went through very thoroughly and described the correct standard to apply post-amendment to disability claims regarding substantial limitation in particular. And the district court mentioned Summers for the general proposition that disability discrimination is illegal, but never mentioned it again in its analysis. So we'd again suggest, as our argument and brief is, that Summers is an excellent guideline for how courts should follow and apply the substantial limitation analysis. Similarly, turning to the question of a request for reasonable accommodation, the court determined that Ms. Parker had not made the request for reasonable accommodation, focusing on the incident I just referenced when Ms. Parker was asked to work additional hours. It was, I believe, late January 2019, one week after she'd been given her limitation by her doctor. And in analyzing that, the court made mention of this court's decision in Kelly, which again describes— She requested it in February though, right? February 22nd? She actually made two requests for accommodation, Your Honor. One was in orally to Ms. Viad directly, a week after she received the note from her doctor. And then there was a second request in writing to the Hartford, which is CNMC's third-party provider of benefits. And they have also a mechanism to contact the Hartford to make a request that way, and she did that as well. That was just factually after Ms. Viad had sought advice from HR on how to proceed with terminating Ms. Parker. We focused on the earlier request because that's the one the district court focused on, since that was more relevant in the timeframe, because Ms. Parker would have needed to have engaged in protected activity prior to the employer taking adverse action against her. So this is all in the context of a retaliation claim. But again, in its analysis of whether or not Ms. Parker had properly requested a reasonable accommodation, the court cited this court's Kelly decision, but didn't explain how it was that Ms. Parker failed to meet what, in Kelly, this court described as a very light and non-burdensome process by which the individual needs only to request an accommodation by asking or identifying to the employer that they need some assistance with their work and that it's related to a disability. So long as there is a logical bridge between those two, the individual does not need, per Kelly, the individual does not need to go any further. I have one question before you sit down. Do you have anything to say about the fact that the district court required an appellant to provide comparative evidence or appeared to require that? We did address that in our brief, Your Honor. And again, it appears that what she was required to do is, well, the district court said that comparative evidence was not required. And when it identified, again, what Ms. Parker had presented, her testimony regarding her own experience with Ms. Viad and how that experience suggested the circumstances around her termination suggested discrimination. The court dismissed it out of hand simply because it was presented in her own testimony. And as this court has recognized repeatedly, that an individual's own testimony isn't necessarily dispositive as to whether or not it has any poetic value. There may be other infirmities with testimonial evidence, but simply because it comes from the plaintiff themselves is not a reason for discounting it. Okay. Thank you. Thank you, Your Honors. All right. Let's see. Who do we hear from next? I guess Mr. Johnson. Thank you, Your Honors. And may it please the court, Jeff Johnson for the appellee in this matter, Children's National Medical Center. In this case, the district court appropriately granted summary judgment on plaintiff's claims of failure to accommodate discrimination and retaliation where the undisputed evidence in the record demonstrated only that the plaintiff was pregnant, that she had performance issues that arise both before and after she disclosed her pregnancy, that the plaintiff went out on a three-day period of bed rest during which she was accommodated by Children's National and allowed to rest and then returned to work in a full-duty capacity, at which time she was terminated for the same performance issues that arose before she ever went out of work. In light of that undisputed record, the district court here appropriately granted summary judgment and used the appropriate legal standards in doing so. So you don't think that the district court used pre-ADAA authority to support the district court's opinion? I don't, Your Honor. I recognize that the district court did take guidance from several pre-ADAA opinions, particularly Wanusu and this court's decision in Brockman, but I think there are several points from those decisions that do remain relevant, which is particularly that pregnancy alone is not a disability. This court has said that a pregnancy-related impairment that's abnormal may be a disability, and that remains good law notwithstanding the fact that the ADAAA lessened the standard to prove a substantial limitation. And the district court here, while it pointed to Wanusu and Brockman as relevant guidance, it did not say that it was applying that substantial limitation standard. And the district court analyzed the evidence in this record to determine that the plaintiff was not substantially limited either in her ability to work or to reproduce, which were the two theories proposed by the plaintiff in this matter. Now, turning first to the prima facie case, which Mr. Bonia addressed at the outset, plaintiff doesn't dispute that she lacked direct evidence of discrimination and was therefore required to proceed under the McDonnell-Douglas burden-shifting framework. Now, under that framework, the plaintiff was first required to create an inference of discrimination. And under this court's precedent, that's most commonly done via comparator evidence. And in fact, the plaintiff in this case pled comparator evidence as her theory of liability in two of her pleadings, both her complaint and her amended complaint, as reflected in pages 25 and 95 of the joint appendix here. The district court, I don't think the district court felt that she was bound by that, that she couldn't make this other showing for that fourth element. That's correct, Your Honor, but plaintiff emphasizes the district court's analysis of comparator evidence. I understand that. The point being it was brought about by plaintiff's own pleading. But plaintiff is right that this court has held, as has the Supreme Court, that the prima facie burden is flexible. It's not rigid. It's adaptive to varying factual circumstances. But to Judge Agee's earlier point about whether or not the evidence plaintiff was providing went to pretext or the prima facie case, plaintiff skips a step in the process. Plaintiff goes right to questioning the believability of the employer's stated reason for terminating her without, while she cites the case law talking about how the prima facie burden is not onerous and is adaptive to various factual circumstances, she doesn't cite to any iteration of the prima facie case recognized by this court or any others that would permit the plaintiff to proceed right to attacking the believability of the employer's stated reason. And I think the Supreme Court's decision in both Reeves and Hicks demonstrate that the plaintiff needs to have a combination of the prima facie case and evidence of pretext to meet their ultimate burden under the McDonnell-Douglas burden. Here's my question on both of those points, which comes from page 812 of the record. And as I read that concluding sentence of the first paragraph, you could read it to say that the district court categorically excluded the plaintiff's own testimony in consideration for the last element of the prima facie case and not quite as clear also on pretext. And I thought that the court was required to consider it and it couldn't exclude it per se from its analysis. That's what I'm asking the question about. Yeah, Your Honor, and I think the district court's opinion is subject to that reading. I think there's certainly language that would indicate that the district court said the plaintiff's own testimony is not competent or admissible on that last prong or on that prong of the prima facie case. But I think the real issue in this case and that this court can find based on the de novo standard of review is that there was no admissible evidence in the record to that effect. Plaintiff argued in her pleadings that Ms. Viad, and Ms. Viad is plaintiff's supervisor, made various statements that were indicative of discriminatory animus, that her behavior changed once the plaintiff had disclosed her pregnancy. But that language was taken directly from the plaintiff's pleading, and it's well established that the plaintiff can't just rely on her pleadings to defeat a properly supported motion for summary judgment. And in fact, if the court looks to the characterization of Ms. Viad's behavior, it's in fact true, and plaintiff would have the court believe, that Ms. Viad remained complementary of the plaintiff right up until the day that she was terminated. So in light of that evidence, which is evident. I'll grant you this is not the strongest plaintiff's case that I've ever seen. But there is this one statement in Answers to Interrogatories on page 364, where it says, Parker called Viad and showed that she needed to limit her hours. Parker informed her that she had a doctor's note in response. Viad said it didn't matter if Parker was pregnant because she was still a salaried employee and her pregnancy was no excuse. Is that not sufficient to get to the prima facie case? Your Honor, I would say no because Title VII would require, outside of the accommodation context where an employer has to make decisions with specific regard to a protected characteristic. I'm not worried, but we'll leave the accommodation stuff out of it. Sure. Under Title VII, the employer is required to make employment decisions without regards for the employee's protected characteristic. So if the supervisor is saying, I'm going to hold you to these particular employment standards notwithstanding the fact that you're pregnant, the employer is actually doing what Title VII would require. Title VII is not an accommodation statute and would require that an employer make decisions without regards to those types of protected characteristics. And as it relates to the characterization of Ms. Viad's behavior, as I was saying, plaintiff alleges and argues in her briefing that Ms. Viad remained complementary of the plaintiff's work right from the time that she was hired until she was terminated. So in light of that, this court has an at best ambiguous record and without comparator evidence is left in a spot of making subjective value judgments about a supervisor's conduct, which this court noted in the Lange v. Federal Express decision, it seeks to avoid. Plaintiff needed that comparator evidence under the circumstances of this case because she had no other basis to create an inference of discrimination without proceeding right to pretext. Now, I'd like to address the issue of disability, which Mr. Tucker addressed as well. The district court also held under these circumstances that the plaintiff was not subject to a substantial limitation of a major life activity. And I want to be clear as to what was disputed and litigated below. Children's National doesn't dispute that the plaintiff was pregnant. Children's National doesn't dispute that she had an impairment related to that pregnancy, i.e. uterine fibroids. Children's National only argued that the plaintiff was not subject to a substantial limitation of a major life activity. And the only limitations that were before the district court were this three-day period of bed rest during which the plaintiff was accommodated and then a later request to limit her work hours to eight hours per day. Now, neither plaintiff or her amici provide any support for the proposition that a plaintiff who is limited to eight hours of work per day or even 40 per week is substantially limited in their ability to work. And as it relates to the three-day period of bed rest, I think plaintiff's own testimony on this point is notable, as Judge Niemeyer pointed out. The plaintiff testified that while she was placed on this period of bed rest, she tried to work and wanted to work and faulted Children's National for telling her to do as her doctor ordered, which was stay on bed rest. Now, so in light of that fact, the court only had those two issues and it had no basis to assume based on the fact that the plaintiff was limited to three days of bed rest and had this later eight-hour limitation that the plaintiff was substantially limited in her ability to work. And as it related to the major life activity of reproduction, there was also nothing in this record to indicate that plaintiff's ability to procreate, whether it be to get pregnant, to carry a baby to term, or to give birth, was substantially limited in any way while she was employed by Children's National. But even if the court disagrees with that assessment of the record, it can still affirm the district court because the judge also determined that Children's National did everything that it was required to do as it related to the plaintiff's accommodation request. And on that point, it's important to note that there is no evidence in this record that plaintiff's eight-hour limitation was caused by her uterine fibroids. The only evidence in the record is a doctor's note indicating that because of pregnancy, the plaintiff is limited to eight hours of work per day. And this court has been clear in the Brockman decision, which remains good law for this point, that the status of being pregnant alone is not a disability under the ADA. And it's well established that an employer only has to accommodate a plaintiff in ways that are related to their disability. So if the plaintiff was limited to eight hours of work per day because of her pregnancy alone, an employer under the ADA has no obligation to accommodate that limitation. And as Judge Niemeyer pointed out earlier, the plaintiff was in fact accommodated when she was on this three-day period of bed rest when her supervisor insisted that she rest and do as the doctor had ordered. I'm still concerned about the district court's reliance on pre-ADAA authority. Is there some place where the district court actually analyzed using the appropriate authority post-ADAA? Your Honor, the judge did cite to, if my recollection serves me right, the statute in applicable regulations regarding the substantial limitation standard as it exists post the Amendments Act. Right, and I think that's what opposing counsel said. The district court acknowledged the standard but then analyzed the standard using outdated authority, which you cited to earlier as the district court found guidance in that old authority. Right, and I think my point was, Your Honor, that I think the district court took guidance from those decisions for reasoning that still remains good law. On the point of substantial limitation— Okay, so you're saying that because the district court substantially quotes the old law and you're saying the portions that the district court quoted and took guidance from remain good law somehow. No, Your Honor, there are very lengthy block quotes in there, so there may be some portions there— I mean, it's pages of block quotes. You're correct, Your Honor. And so I can't sit here and represent to the court that there's not language in there that may be indicative of a pre-Amendments Act substantial limitation standard, but if you look at the actual analysis by the district court of the facts of this case— which post-ADA authority did the district court find guidance in? It had cited to the regulations, Your Honor, so I would say certainly the statute and regulations, but I will also say that the district court's reasoning is entirely consistent with the post-Amendments Act substantial limitation standard. Particularly, the court noted that there was no evidence in the record to corroborate that the plaintiff was substantially limited in her ability to reproduce, whether under a pre-Amendments Act standard or a post one. There was just no evidence in this record that the plaintiff was limited in that regard. And even as it relates to the eight-hour limitation, plaintiff and her amici don't cite to any support from any authority that a limitation of eight hours of work per day or 40 per week is a substantial limitation of a major life activity. The EEOC's regulations are clear that we need to compare a particular plaintiff's substantial— Supposedly, counsel said that there was testimony from the corporate designee saying that she was expected to work more than 40 hours a week. Is that accurate, or what's your response to that? Well, Your Honor, I think that gets to whether or not she was in fact denied an accommodation, but on that point, the corporate designee's testimony was simply that salaried employees sometimes are and sometimes aren't required to work more than 40 hours per week. They're hired to do a particular job. The corporate designee never provided any testimony about whether plaintiff in particular was required to work in excess of eight hours per day, and the plaintiff's supervisor, the one who would have knowledge of the plaintiff's particular job requirements, testified that she wasn't subject to that and she was never required to do so. So the corporate designee you're saying was just speaking in general that salaried employees are required to work sometimes more than 40 hours a week, but the designee's response was not specific with regard to appellant here? That's correct, Your Honor. The designee's response was in regards to salaried employees and what sort of expectations are placed on them, and I'm paraphrasing the testimony, but it's specific to the job. It may be that they work less than 40 hours. It may be that they work more, but there was certainly nothing in the record from the corporate designee that Ms. Parker in particular works in excess of 40 hours per week. Now, I know there was some reference to the e-mails in the record about Ms. Parker working in excess of eight hours per day because she was sending e-mails late at night, and I know the plaintiffs provide a lot of e-mails in the record to try and corroborate that point, but I would only point out that there are only three e-mails that post-date the plaintiff's alleged request for this eight-hour limitation, and of those three e-mails, in two of them, the plaintiff, unsolicited, is sending work-related correspondence to her supervisor without any indication that she was required to do so or that that was some sort of continual shift of the plaintiff till 10, 11 p.m. at night. And then in the third e-mail, the supervisor asked the plaintiff a question at 10 or 11 a.m. in the morning, and the plaintiff inexplicably waited until 11 p.m. to respond. That was the point I was going to make as well. I think that e-mails late at night might just indicate she didn't actually get her work done during her eight hours, and that third e-mail seems to indicate that. She's doing something else with her time during those eight hours. There's nothing in the record to indicate what plaintiff was doing earlier in the date on those occasions, so I would submit that the most the court can infer from those e-mails is that if anyone disregarded the plaintiff's doctor's orders, it was the plaintiff herself. Children's National can't stop the plaintiff from sending e-mails late at night if she's so inclined, but there's certainly no evidence in the record that Ms. Viad made her do that as some sort of requirement of her job or any sort of typical shift that she was expected to work. I'd like to lastly address the issue of pretext, which this court can get to and address if it establishes or decides that the plaintiff met the elements of the prima facie case. Now, plaintiff attacks the district court's ruling on the issue of pretext on two basis. The plaintiff first argues that she was held to a pretext plus standard and then argues as an evidentiary matter that she did in fact provide admissible evidence of pretext on this record. Now, regarding the former, I think it's important to clarify what the pretext plus standard is, and I think once that's clarified, it's fairly clear that the plaintiff was not held to any impermissible burden. And this court, and including several other circuits prior to the Supreme Court's decision in Reeves, had decided that a plaintiff, in order to meet their burden to prove intentional discrimination, was required to both meet the elements of the prima facie case and then provide separate or additional. Just so I'm clear, your argument here is along the lines of if we assume without deciding that the plaintiff met her prima facie case under Title VII, we then go to pretext, and that's what you're arguing now? That's correct, Your Honor. It's an argument in the alternative. So should the court decide that the plaintiff didn't meet her initial burden to prove the prima facie case, it can end there. But if the court does decide that she did meet that burden, it should still affirm, in light of the district court's reasoning and analysis on the issue of pretext, which is also part of plaintiff's burden under the McDonnell-Douglas burden-shifting framework. And under that framework, the district court cited to an earlier district court opinion in Ramos v. Molina for the proposition that the plaintiff had the burden to prove both that the employer's stated reason for the employment action was not believable and that the true reason was intentional discrimination. And the plaintiff points to that as evidence that she was held to a pretext-plus standard, but I think it's important to note that Ramos v. Molina was decided nearly 10 years after the Supreme Court's decision in Reeves, which got rid of the pretext-plus standard, and that this court later affirmed Ramos v. Molina in an opinion which also noted that the plaintiff was held to that burden and cited extensively to Reeves. So based on that fact, the mere fact that the district court had cited to Ramos v. Molina certainly didn't hold the plaintiff to a pretext-plus burden. Now I know my time is limited and plaintiff has a lot of evidence in the record that she claims to be evidence of pretext, but I'll submit to the court that much of that evidence is pure speculation in second-guessing Ms. Fiad's analysis and assessment of the plaintiff's performance. And just to give an example, plaintiff speculates that Ms. Fiad at one point in time in vetting the termination decision with Children's National's HR Department used the term loopholes. And plaintiff speculates and guesses, well, Ms. Fiad must have meant you use that as a pejorative term and that's indicative of discriminatory animus. But there's no evidence in this record to that effect, as there is no evidence regarding plaintiff's other assessments of pretext that this was a lie or a cover-up for intentional discrimination. All right, thank you. Thank you, Your Honors. All right, I guess we have Mr. Bagna. Thank you. I'd like to address, you know, whether or not Ms. Parker has submitted enough evidence to demonstrate that she was a qualified person with a disability. And I do believe the evidence is overwhelming here, that she certainly meets that prong of her ADA claim. You know, she submitted medical records and testimony of a fibroid rupture, severe bleeding, an ER visit, three days of physician-ordered bed rest, time off of work, evidence of five additional fibroids that she had in her uterus, one impinging on the wall of the uterus, evidence that she was placed on medical monitoring to assess the viability of her fetus, evidence that she required spontaneous abortion precautions. All that is in the Joint Appendix 430. Evidence that she was diagnosed with uterine fibroids affecting pregnancy. That's the official diagnosis. Evidence that she was diagnosed with a high-risk pregnancy. Evidence of a subsequent vaginal bleed that required medical attention and time off of work. And evidence of uterine pressure due to fibroids requiring her to wear a brace and affecting her ability to walk. You know, there's no doubt, you know, from our perspective that's certainly enough to raise or enough evidence to show, to demonstrate that that affects her major bodily functions of her reproduction. And not only that, it also is evidence of an episodic condition, and that's something that the district court simply did not address. We argued that in summary judgment, that her condition does qualify under the ADA under episodic conditions, and it just went completely unaddressed, and nobody's ever addressed it. And it certainly qualifies as a condition. She had a fibroid rupture. She already had two episodes of vaginal bleeds, rather, and she had five more fibroids in her uterus on top of that. And so, you know, the ADA, while there isn't a lot of case law with respect to episodic conditions, you know, the plain language of the statute is pretty clear. It's an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when acted. And so when she has these vaginal bleeds, both times she had vaginal bleeds, she had to take time off of work, and she had to go seek medical attention. And so that, coupled with the fact that she has a diagnosis of five other fibroids in her uterus, you know, she is absolutely under that theory of disability, has proffered enough evidence to meet that prong that she is a qualified person with a disability. And with respect to the 40-hour limitation, while the Children's National argues that that doesn't show a substantial limitation, that's pre-ADA mentality. If a doctor orders you to work eight hours a day because if you don't, you might suffer an episodic condition such as a fibroid rupture or a vaginal bleed, which would make you disabled when active, then that's certainly an accommodation that should be explored and the interactive process should take over at that point as well. With respect to pretext evidence, you know, we submitted a lot of pretext evidence, and while they call it speculation, we would call it reasonable inference in the totality of the circumstances that a jury could easily conclude. The fact that the supervisor went to HR within two weeks of Ms. Parker asking for an accommodation, seeking to terminate her, but still wanted to keep this alleged poor performer working for her and doing work for another six to eight weeks just defies common sense business logic to want to hold on to a poor performer. And so we have temporal proximity coupled with the fact that she wanted to hold on to her, which would lend to what we would say a reasonable inference that it really wasn't performance, but it was this pregnancy and this pregnancy-related accommodation that the supervisor didn't want to accommodate. We have shifting stories relating to performance. They can't get their story straight. Was she fired because the people that she was teaching, she was a corporate trainer, were failing their assessments? Well, they abandoned that. That's what they said at the EEOC. That's what they said early in discovery. When you kick the tires on that claim, they had to abandon that, and then they came up with a more sort of specious argument that students in her class weren't prepared adequately. And so that's sort of something that's subjective, and the evidence of that is an unknown declarant to the supervisor from another manager saying that their subordinates weren't well prepared for the assessment. And so that's shifting stories, obvious evidence of pretext, and I think somebody could easily reach the conclusion, a jury could reach the conclusion that unlawful discrimination is afoot. Thank you. We'll come down and greet counsel during court for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker